## DITMER v BOARD OF COUNTY COMMISSIONERS OF MONTGOMERY COUNTY, OHIO

Ohio Appeals, 2nd Dist, Montgomery Co

No 1687. Decided May 20, 1941

Allen C. McDonald, Dayton, for Plaintiff-Appellant.

Nicholas F. Nolan, Prosecuting Attorney, Dayton, and E. E. Duncan, Asst. Pros. Attorney, Dayton, for Defendants-Appellees.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

Plaintiff in her petition sought damages in the sum of $5000.00 for personal injuries claimed to have been sustained through the careless, unlawful and negligent acts of the Commissioners, as set out in her amended petition.

The trial court sustained a general demurrer to plaintiff's pleading and not desiring to plead further, the amended petition was dismissed and costs adjudged against her. Proper steps were taken through which the case was lodged in our court as an appeal on questions of law.

The sole and only question for our determination is the sufficiency of the amended petition.

The first paragraph of the amended petition sets out the names and qualifications of the Board of Commissioners of Montgomery County, Ohio, and that they are now serving in said capacity, and as such have legal charge of all matters relating to said county, including the supervision, construction, maintenance and repair of county roads in Montgomery County, Ohio.

The first part of the second paragraph is historical and relates to the existence and location of a county highway in the western part of Montgomery County and which passes through the unincorporated village of Wengerlawn, and so forth.

. "That approximately one-half mile north of said town of Wengerlawn is a cement culvert which was constructed, as plaintiff is informed, believes and therefore avers, a number of years ago, and which passes across and underneath said county highway; that a ditch or water channel of about eight feet in depth passes underneath the county highway at this point, with the ground gradually sloping down from each side to the base of this depression; and that said cement culvert is only about fifteen feet in length and has cement walls at each end which have been built something like two or two and one-half feet in height, and perhaps six or eight inches in width."

The third and fourth paragraphs are set out in full and read as follows:

"Plaintiff further says that said cement walls so constructed at each end of said culvert stand about one and one-half feet inside of and distant from the outer edge of the graveled highway on each side of said county road; that the distance between said walls appears to be about fifteen feet; that the graveled portion of the high-

way, as plaintiff is informed, believes and therefore avers, was until something like four years ago about the width of the distance between said walls of said culvert, namely, something like fifteen feet; that approximately four years ago the graveled portion of said highway was widened to its present width of about eighteen feet; and that as a result, the graveled portion of said highway at this time extends about one and one-half feet outside of and beyond the end walls of said culvert so constructed and standing inside of the graveled highway on each side thereof, as aforesaid.

Plaintiff further says that about 9:30 o'clock in the forenoon of said December 10, 1935, as she was driving an automobile owned by her husband, and being a Willys-Overland car, northwardly, on said highway, a heavy snow was falling and had been falling for some time previously until the ground was entirely covered with snow, including the graveled portion of said highway and including also the tops of said cement walls at the ends of said culvert; that because of the presence of said snow, this plaintiff was driving said automobile cautiously and probably not to exceed twenty-five miles per hour; that as plaintiff was driving said automobile in a northwardly direction and carefully selecting her course on said highway on the right hand side thereof, and watching for any motor vehicles which might approach her from either direction, suddenly, without warning and without fault of any kind on her part, her said automobile struck the east end wall of said culvert with great force and violence; that the point of contact in said collision was the front axle of said automobile perhaps a foot or more inside of the right front wheel; that plaintiff, by the use of reasonable diligence, was unable to observe, and see said cement wall at said time because of the presence of said snow on said highway and also on top of said wall, and there being a heavy downfall of said snow at said time, as aforesaid; that as a result of the impact of her said automobile against said cement wall, her said car was thrown around toward the center of said highway with such momentum that said car was hurled over onto its left side and into the top thereof; and that said car stopped in a wholly capsized position in the center of said highway, on the top thereof, with the wheels and chassis of said car projecting upwardly into space."

The fifth and sixth paragraphs describe in detail the claimed resultant injuries, and since these allegations have no bearing on the demurrer, they are not copied.

The seventh paragraph is quoted in full:

"Plaintiff says that at the time said injuries were sustained, she was in the exercise of reasonable care and diligence; that the construction of said cement walls of said culvert inside of the outer edges of said driveway, or the reconstruction of said driveway outside of the position of said cement walls as aforesaid, constituted a dangerous situation, and was fraught with great danger to drivers of automobiles; that the construction of said culvert shorter in length than the width of said highway originally, or the extension of the graveled portion of said highway beyond the end walls of said culvert, had been at the instance and under the direction of said defendants, Samuel G. Carr, Clement L. Shroyer and John E. Brumbaugh, or their predecesors in office; that said defendants, Samuel G. Carr, Clement L. Shroyer and John E. Brumbaugh, by reason of the long continuance of said condition, should have had notice thereof, and especially of the dangerous nature of said condition and situation in times of heavy precipitation, either of rain or snow, or both, in the immediate vicinity thereof, so as to give warning to drivers of automobiles or other vehicles, of said dangerous situation; and that said defendants, Samuel G. Carr, Clement L. Shroyer and John E. Brumbaugh, were guilty of gross carelessness and negligence because of their failure to abate

said nuisance and to put said highway at said point in a proper, lawful and reasonably safe condition, for the safe use of said highway by automobile drivers who might pass upon and along the same."

The eighth and last paragraph contains the prayer.

Boards of County Commissioners are not liable in their official capacity for damages for negligent discharge of their official duties, except insofar as such liability is created by statute, and such liability shall not be extended beyond the clear import of the terms of the statute.

Weiher, By, etc. v Phillips et, 103 Oh St 249.

The statutory liability of County Commissioners in their official capacity should be construed strictly.

Commissioners v Darst, 96 Oh St 163; Riley v Commissioners, 109 Oh St 29; Weiher v Phillips, 103 Oh St 249.

It is not easy of determination from the amended petition as to just what statutory requirement was claimed to be violated by the Board of County Commissioners. We assume that plaintiff is seeking to invoke the provisions of that part of §2408 GC which creates liability against the Board in their official capacity "by reason of its carelessness or negligence in not keeping any such road or bridge in proper repair."

As we construe the amended petition the gravamen of the complaint was that the culvert between the cement walls and at the end thereof was only 15 feet wide, whereas the graveled portion of the highway was 18 feet wide. We do not understand that the culvert, including its cement walls, was improperly constructed or out of repair, except that its being narrower than the graveled portion of the highway constituted a defect. It is not claimed that the cement walls at either end of the culvert, constructed 2 to 2½ feet

in height, and 6 to 8 inches in width, were not sufficient in height or width to properly comply with the statutory requirements for guards. The amended petition sets out at length the fact that at the time plaintiff was traveling on the highway and previous thereto, it was snowing very hard so as to entirely cover the travelled portion of the highway and the cement walls. Of course, the county would not be responsible for the elements, nor do we understand that any such claim is made. The excessive snow which had fallen and was then falling is set out as a reason why plaintiff could not see the highway, and the cement guards.

It is difficult to understand how plaintiff reasons when she could not see the highway, how the fact that it was 3 feet wider than the culvert would in any way be an excuse for her driving too far to the right.

In the final analysis we must return to our former construction of the pleading that plaintiff complains against the defendant Commissioners in maintaining the culvert 3 feet narrower than the graveled portion of the highway.

The Court of Appeals of the Third District had before it this identical question in the case of Allison v Board of Co. Commissioners of Crawford County, 19 Abs 74. Syllabus 2 reads as follows:

"2. It is not actionable negligence within §2408 GC on the part of the Board of County Commissioners to construct a bridge narrower than the travelled portion of a road."

Syllabus 3 is also in point, and it will be found interesting to read the entire case.

We are in accord with the reasoning in above cited case.

Counsel for plaintiff in their brief cite §§7563, 7564 and 7565 GC. These sections relate to guard rails and provide liability against County Commissioners for failure to construct under certain conditions. There is nothing

whatever in the amended petition through which these sections can be given application.

So far as the petition discloses we have no facts through which it can be ascertainable that guard rails to the bridge or a perpendicular embankment were required; furthermore if required, there is no allegation that they were not constructed and maintained; and there is no allegation that failure to construct the guard rail was the proximate cause of the accident and attending injuries.

The original papers attached to the transcript of docket and journal entries disclose that this identical question was presented before the Common Pleas Court, so it can not be said that counsel for plaintiff was taken by surprise. If it was seriously intended that sections of the Code providing for guard rails should be considered, there was ample opportunity to amend his petition, setting out the proper allegations.

This was not done; on the other hand, counsel announced that he did not desire to plead further and hence the court dismissed the petition and entered final judgment.

The trial court was right in sustaining the demurrer and dismissing plaintiff's action. We find no error, therefore the judgment of the trial court will be affirmed.

Costs in this court will be adjudged against appellant.

GEIGER, PJ. & HORNBECK, J., concur.